The next case on the calendar is McBurnie v. RAC Acceptance. Good morning. May it please the Court, I'm Rob Friedman for Appellant RAC Acceptance East. I'd like to respectfully reserve five minutes for rebuttal. The crux of the District Court's arbitration, which is error for several reasons. I'm going to very briefly address waiver, then I'm going to move on and talk about Article III standing, Viking River Cruises abrogation of Blair, and the severability provision in the Consumer Arbitration Agreement. To start with futility, with respect to waiver, plaintiffs take contradictory positions as did the District Court below. On the one hand, they argue and concede that the Blair injunction would have made RAC's motion, appellant's motion, futile at the inception, but even now. On the other hand, plaintiffs argue we somehow waited too long. They can't take these inconsistent positions, they're irreconcilable, and they can't have it both ways. They're right about one thing, initially this case was futile because of the Blair injunction. Second, the District Court, excuse me, the District Court misapplied the waiver doctrine in several ways. First and foremost, including its failure, let alone to even mention the futility doctrine. And under the futility doctrine, there's no knowledge of an existing right to compel arbitration, which is one of the elements, if a party believed the motion will be futile. We cited numerous controlling Ninth Circuit cases for this unremarkable proposition. And the District Court did not consider or apply the futility doctrine. And in fact, until very recently, for appellant to move to compel arbitration until several factors occur. As soon as those factors occur with deliberate speed, we did move to compel arbitration, and we promptly moved as soon as the case was no longer futile. So the District Court's primary holding that appellant waived arbitration is error. Additionally, there was an addition to unwaiver without even addressing the McGill or Blair rule. The plaintiffs do not have Article III standing to bring claims for public injunctive relief, and let me explain why. As an initial matter, there are two things they complain about. They complain about this $1.99 expedited fee, and they also complain about the processing fee of $45. And I gather that none of the, neither of the plaintiffs actually paid the $1.99. That's correct, Your Honor. As to the $45, did they pay that? Yes, Your Honor, they did. Okay. So why is there no Article III standing with respect to that? Sure, Your Honor. And the reason for that is because the California Attorney General entered an injunction, a permanent injunction, actually the day before we moved to compel arbitration. And the very claims that they are complaining about in their complaint and the relief they're seeking are a subset of what the California Attorney General has already entered as a permanent injunction. The district court says that the relief sought and then obtained by the Attorney General is not absolutely the same as the relief sought with respect to these $45 payments. How do you respond to that? Your Honor, the relief by the Attorney General is actually broader, and let me explain why. In the complaint, the plaintiffs complain that Cornett and, for that matter, UCLCRA has violated, quote, by charging plaintiffs and all class members a processing fee that is prohibited by the Cornett Act because such fee is not reasonable and is not an actual cost incurred by defendants. They go on to say, by charging such fee to plaintiffs and other class members and other California customers of acceptance now, defendants violate, continue to violate 18.12.624. The injunction actually covers multiple practices. And in addition, with respect to the practices it covers, it prohibits 14 practices, including the very relief that the plaintiffs are seeking. And it says, charging or listing a processing fee or any other fee the defendant cannot establish as reasonable an actual cost incurred by defendant. But if I can interrupt you there, that language just parrots the language of the statute, the Cornett Act. And if I understand it, the dispute between the parties, the district court was, whether that language includes overhead costs. And I guess your position was, yes, that includes overhead costs, therefore, we can reach $45. And I think they were saying, no, it has to be more direct costs. You know, looking at the consent decree, I mean, it just repeats the statute, which you guys disputed the meaning over it. Well, Your Honor, the statute does not allow the imposition of certain costs that cannot be shown. So would you say now that under the consent decree, you can't include overhead costs? Your Honor, we could include overhead costs if they're lawful, which is the— I mean, then you guys are at the same place. You guys disagree. So I don't know what the consent decree does. But, Your Honor, they're not claiming that there could be no costs. They're claiming that the cost as the $199, which, again, nobody incurred, and the $45 are not reasonable costs under the Act. But your position in district court was the $45 was reasonable because it includes actual costs, which you include overhead costs. Your Honor, our position in the district court was they don't have standing because it's been enjoined. And the California attorney general has said, if the $45 is not a reasonable cost, it cannot be charged. So would you say now the $45 is not a reasonable and actual cost? Your Honor, I don't know if it is or not. If it's not, then it falls under the California injunction. I mean, to be clear— Then I don't see how the consent decree—how this issue is moot then. I mean, if you— Your Honor— If you're reserving the position that you can maybe say $45 is the actual and reasonable cost, then— Your Honor, there's a dispute. First of all, there's no—the $45 is not being charged anymore. Second, but I don't—again, I want to be clear because this is not an issue of voluntary cessation. This is an issue where the California attorney general said we cannot charge unlawful costs. They are saying the same thing. They're saying we can't charge unlawful costs. If the $45, which isn't being charged anymore, is in fact an unlawful cost, there are all sorts of provisions  clear, it's not just the fees that are addressed in the California injunction. There's 14 different types of actions that are prohibited. It also requires us, Your Honor, to provide a know-your-rights document which specifically requires the company to provide a listing of the fee and what the basis of the fee is. But the point I want to make, Your Honor, is the relief that they are seeking and the $45 are covered. And to be clear, the AG injunction is even greater than the relief they would get on their own. So, Your Honor, we believe that under the case law we've cited, they do not have standing anymore given the fact that, again, one of the claims doesn't even exist anymore because they never incurred the $199, but the $45, the very type of behavior they challenged. And by the way, Your Honor, it is addressed. There was a three-year investigation or a multi-year investigation, and the injunction actually mentions the $45 within the injunction. Then it goes on to say what is actually enjoyed. So, Your Honor, the point we want to make is their claim for relief and the injunctive relief are the same. And given the fact that they're the same, they're essentially seeking a superfluous injunction that would be a duplication of what the California Attorney General already has. And the California Attorney General has required certain reporting obligations. We must report compliance with this. We must report compliance with the law. And if there is a violation, the California Attorney General has the right to come in, Your Honors, and take enforcement action. Can I interrupt for just a minute? You said that the $45 is no longer charged. Is that correct? That's correct, Your Honor. So why are we fighting about an injunction? That is to say, if it's not doing it, injunctive relief seems to me unnecessary. So what are we talking about? Well, Your Honor, they are trying to characterize this as a voluntary cessation doctrine. What we're trying to say is under the California Attorney General Act, the California Attorney General's injunction, it's even stronger than voluntary cessation. But, Your Honor, there is, I don't know, there may be some type of fee that's being charged. It's not $45 at this point. And the relief they're seeking is no longer relief that they have access to. The point we simply want to make is, given the Attorney General injunction, there is no standing. And the case law we cite from the Supreme Court, the Ninth Circuit, says if the issue, if they do not have standing anymore, then it should be, their injunction should go away. And, Your Honors, the basis for their public injunction claim is to try to abrogate, essentially, the arbitration agreement. They are seeking an injunction for the same types of activities that have already been enjoined by the California injunction. Your Honor, to the extent the Court believes that because we're not charging the $45 anymore, that's a separate and independent reason to show they don't have standing, that's fine. But the argument we're making is that by virtue of the AG injunction, they no longer have standing. And, Your Honor, with respect to Viking River, I want to move on before I run out of time. Viking River Cruises also abrogates Blair. And so even if the plaintiffs did have standing and it's our position they do not have standing, the Blair panel abrogated Iskanian. And the Court previously, this Court in Ninth Circuit and Blair previously held that SACOB, which is essentially the federal version of Iskanian, all but decides this case. In Viking River Cruises, the Court abrogated Iskanian, thereby abrogating SACOB. And because Blair relies on SACOB... But in Viking River, the Court was very explicit in saying that a freestanding, non-individual PAGA claim is different from an individual claim, correct? Your Honor, they said that, but the problem with the opinion below is it seeks to create a unitary claim. So whereas Viking River Cruises said it was improper under Iskanian to essentially create one claim, both representative and individual, the flaw with the... They were non-severable, right? They were non-severable. And the effect of the District Court's opinion below is the same fault that Viking River. It forces us, by virtue of their cramming all these claims together, to not be able to enforce the arbitration agreement and enforce it individually. So it's essentially abrogating our arbitration agreement by doing exactly what Viking River Cruises found to be wrong and exactly what Viking River Cruises reversed or abrogated with respect to SACOB. So in that respect, Your Honor, Viking River Cruises abrogates Blair. There's another basis for enforcement of arbitration agreement and reversal, and that's severability. So even if McGill and Blair survive Viking River Cruises, the court should have applied the severability provision. Now, I recognize that previously in Blair, the court interpreted the severability provision in a different way. The argument we're making, Your Honors, is, and it's been recognized by the California Court of Appeals in PIPLAC versus in Atberger, is the severability provision has to be viewed in a different way than it was before. And specifically, Your Honor, when the severability provision refers to a particular claim for relief, that does not mean the entire claim. Just like in PIPLAC, the individual claim should go to arbitration, the public injunction claim and only the public injunction claim should be severed. And to be clear, Your Honor, the fault, we think with the Blair Court, but more importantly, the fault under today's reasoning following Viking River Cruises is equating particular claim for relief with the entire claim. Particular claim for relief is limited. And by the way, Your Honors, if this had been a situation where they had pleaded violation of the carnet followed by a separate claim for public injunctive relief, there'd be no debate. Their choice to try to cram all these together is not going to be viewed favorably anymore under Viking River Cruises. And because of that, the language here, if there's a final judicial determination, the applicable law precludes enforcement of this paragraph's limitations to a particular claim for relief, then that claim and only that claim must be severed. I mean, the language here is the same as in Blair. And I think the problem here is that you're stuck with Blair. Actually, I think Judge Fletcher wrote Blair, so maybe we're blessed with Blair. But that's the problem here. I mean, I just don't see how you get around it. I see some of the tensions you're pointing out, but it's a pretty high standard to say we ignore another panel opinion here. Well, Your Honor, under Miller v. Gammie and other cases in the Ninth Circuit, if there is an intervening ruling by the U.S. Supreme Court, the U.S. This court can seek the other panel's decision as abrogated, essentially overruled. That's exactly the position we're taking. So the position we're taking is we're neither stuck nor blessed with Blair because the reasoning of Blair does not survive Viking River Cruises. Going on that one, on the severability, I mean, does the reasoning in Viking really apply here to the contractual language? Because Viking River was really about state law preventing parties from contracting to arbitrate at least some claims. Here, if we're just looking at the contractual language, state law doesn't prevent it. I mean, parties can always renegotiate or redo their severability language. And the problem here is the severability language here, you know, language here was, Blair said, you know, ruled against you previously. So you can always change that language. I don't know if it implicates the same concerns as in Viking River where, you know, the California state law, Supreme Court decision, prevent parties from contracting to arbitrate. Your Honor, admittedly, the language here is the same as what Judge Fletcher looked at before. What's not the same is Viking River Cruises and how it's been interpreted, including by a California court of appeals. And given how Viking River Cruises came out, the claims can be divided. It is our contention that the language of the severability clause either flat out requires severability or alternatively is ambiguous. And that's important, Your Honor, because whereas the Blair court found that this contention today would be either it's clear it has to be severed or it's ambiguous. And if it's ambiguous and nobody disputes this under Lamps Plus, ambiguity must be resolved in favor of arbitration. Your Honors, I went a minute over the amount I wanted with, unless there's any other questions, I'm going to reserve my remaining time for rebuttal. Thank you, Your Honors. May it please the Court, Michael Rubin for the plaintiff's appellees. I'm going to try to simplify the issues before the panel this morning. Counsel began by acknowledging that at the outset of this case, and plainly plaintiffs have standing. They're seeking not only injunctive relief, but they're seeking statutory damages. There's Article III standing. Plaintiffs can proceed. Counsel said at the outset of the case, RAC could not file its motion to compel arbitration because it was bound by the Blair consent decree. Now, it didn't mention the Blair consent decree in its motion to compel arbitration, didn't argue that that applied, but it now recognizes that the Blair consent decree did in fact apply at the outset and in fact in five different places in its briefs. In this court, it acknowledges that it's bound, or at least it was bound by the Blair consent decree. The Blair consent decree required Rent-a-Center to revise the agreement that was invalidated by this panel in Blair. It did not. We have the arbitration agreements. The Blair consent decree was January 2020. One of the plaintiff's arbitration agreements was January 17th. That was not revised. The second plaintiff's arbitration agreement was March 2020. That was the exact same agreement that was struck down in Blair that the consent decree required Rent-a-Center to revise. It is an illegal and unforceable arbitration agreement because it violates Blair. That should end this dispute. The second part of the Blair consent decree equally applies. It says that Rent-a-Center, and by Rent-a-Center under Rule 65d, that includes all those who act in concert and participation with it, which includes the defendant here,  it says it may not enforce that unrevised arbitration agreement and it cannot enforce any arbitration agreement against its customers that strips them of the right to pursue public injunctive relief in all forms unless and until there's been a final determination that the governing unanimous Supreme Court case has been overruled, McGill. McGill has not been overruled. So, therefore, the short and most direct answer to all the arguments in Rent-a-Center's brief and all the arguments you've heard today is that the Blair consent decree precluded the enforcement at any time of these unrevised arbitration agreements and, therefore, while this was not the reason that the district judge relied on, he did, in fact, rely on waiver, this is an alternative basis, we argued it below, for upholding the decision below and affirming the denial of Rent-a-Center's motion to compel. The Blair consent decree that the parent company voluntarily entered into precluded Rent-a-Center from enforcing these agreements. Can you... So we've got an argument that Viking River is fatally inconsistent with Blair, that is to say, fatal for Blair. How do you respond? Even if it were, it would not... Is it? That's my question. No, no, no, it's certainly not. There are two parts to Viking River cruise. The first part, the most important part, the part that the parties briefed in Viking River cruise was the challenge to what the U.S. Supreme Court called the principle rule of Ascanian. The principle rule of Ascanian is that arbitration may not be used to strip a party of state substantive law rights. That was in part two of the Viking River cruise case. That was the exact same reasoning that this court relied upon in Blair and it was the exact same reasoning that the unanimous Supreme Court relied upon in McGill. An arbitration agreement that strips an individual, a consumer, of the right to pursue public injunctive relief that is provided by statute is the stripping of a substantive state law right. It has been declared that by this court and by the California Supreme Court. So therefore, the first part of Viking River cruise supports our position and supports Blair and McGill because it reinforces that you may not have an arbitration agreement that strips someone of that substantive statutory right to public injunctive relief. What Rent-A-Center is relying upon is the second part of Ascanian where it focused on the unique nature of a PAGA claim. Now, PAGA is an unusual statute because the way it was written by the California legislature, it permits the aggregation of individual claims and requires that all of those individual claims be determined in a single proceeding. That's the unitary proceeding that's been referred to. What the Supreme Court said in the second part of Viking River cruise is that a state cannot compel through a procedural mechanism the aggregation of individual claims if the parties to an arbitration agreement want claims to proceed only on an individual non-aggregated basis. But Judge Lee, you are exactly right. A public injunction is not an aggregation of claims. McGill says that it's not an aggregation of individual claims. Blair expressly said that it's not an aggregation of individual claims. So that part of Viking River cruise has absolutely nothing to do with the issues in this case. So therefore, in direct answer to Your Honor's question, no, Viking River cruise completely supports Blair and McGill. It doesn't undercut those cases in the slightest. But as I was saying at the outset, even if it did, all that would mean is under the language of the parties' agreement and under the language of the consent decree, they could, in the future, reform or revise or modify the arbitration agreement. So at some point in the future, additional consumers could be bound by a different agreement, but that doesn't justify their failure to have complied with the consent decree at the outset of this case. Can you address standing for the $1.99 fee? I mean, if neither plaintiff paid for it, how do they have Article III standing for that claim? They have standing because under the Carnet Act, specifically Section 1812.624a, the Act specifically says that you may not have any provision in an agreement as their agreement does that has such a fee. Regardless of what the statute says, we ought to see Article III standing to see if there's been an injury in fact. And if they haven't been injured, if they never paid for it, I don't see how they can have Article III standing. Let's break it down a moment. They have Article III standing in this litigation because they're seeking more than injunctive relief. They have Article III standing to seek injunctive relief because of the other fees. But for the $1.99? They have Article III standing for the $1.99 because their agreement requires them to. So if at any point they made a payment by telephone, they would be required to pay that fee, and that fee is an unlawful fee. But they never paid it. That's correct, but they are bound by an agreement that says if instead of paying by credit card, you pay by check or in person, you pay by telephone, then you must pay. And in addition, there is our pending motion to amend the complaint, our class certification motion in the district court. We have other individuals who did in fact pay that $1.99 fee. There would be a legitimate question as to their ability to pursue that claim if that were the only issue before the district court, but it's a mootness issue before this court, not a standing issue. The question is really whether something that has happened since they initially had standing, because certainly they were faced with that threat. Did the district court address the $1.99 fee? The district court has not reached the merits of the issue. The district court acknowledged that they were subject to both fees. Both fees were in their agreements and that under the statutory section I just cited, that is an illegal provision that entitles them to statutory damages, which therefore gives them standing. Let me make my question more precise. Did the district court rule on the legality of the $1.99 fee? No, no. There's been no ruling whatsoever on the merits of this case. It's an open question. Did it rule on whether or not these plaintiffs could challenge the $1.99 fee? He did not rule on that. So why is that question now before us? It shouldn't be before you. It is still a live inquiry. What Rent-A-Center is saying is that the reason it's before you is because the Attorney General's new injunction, but as Judge Lee pointed out, that certainly doesn't moot the issue. That certainly doesn't place the issue before you because the injunction simply parrots the statutory language and doesn't deal with the arguments that these plaintiffs are actively pursuing, which, as you point out, the district court has not yet resolved. It's an open, live question that is not moot as to which they still are standing to pursue, which is whether, despite the language of the statute, saying that you can only charge actual costs and it must be reasonable, a company can justify the $1.99 fee by taking depreciation nationwide on all of its equipment and taking the salaries and benefits and payroll taxes paid on behalf of executives, staff, and managers throughout the country and allocating a portion of that. What we're saying is that we're entitled to a very specific injunction. That injunction is not going to simply parrot the language of the statute. That injunction and what we say in the complaint just states generally what we're seeking, but specifically, we want an injunction that prohibits Rent-to-Center from charging any fee as the Carnatic provides that is not tied to its actual pass-through of an expense incurred with respect to a specific customer transaction for that customer. That is not what the Attorney General's consent decree provides. It is not that specific. It is not, in the words of the district court, that concrete, and therefore, the plaintiffs continue to have standing. The issue is not moot, but there's no need for the court to reach any of those issues because the question before you is not whether this case should be dismissed on mootness or standing ground. The question is whether the motion to compel was properly denied. And the reason, among many, that it was properly denied was because at the time that the arbitrations were entered into in one plaintiff, it was an illegal contract because it violated the consent decree. For the other plaintiff, it was an illegal contract because it wasn't revised. And for both of them, the consent decree bars right-to-center from seeking to enforce it until there's been a final determination and the MIGLA has been overturned and there has been no final determination, nor should there be one. As to GAMI, GAMI is very clear that before you can... Implicitly abrogates is very different from the language of the provision here which says final judicial determination. But even if the standard were implicitly abrogates, GAMI is very clear in order to have a U.S. Supreme Court preclude the application or enforcement of a decision by this panel, there must be clear, irreconcilable differences between the two. And that's certainly not the case because Viking River, in fact, upholds the reasoning of Blair in that first part where it affirmed the principal rule of the Scanian. I would point out that in addition to the arguments that we have presented, the California Court of Appeal in Vaughn v. Tesla also expressly concluded in a decision that was unanimous by the appellate panel in which the Cal Supreme Court denied review that Viking River Cruz supports MIGLA and does not overturn MIGLA. Absent further questions, I have nothing more to add. Great. Thank you. Your Honors, let me start first with addressing the consent decree. First of all, the consent decree says that it prohibits otherwise from us promulgating arbitration agreement that prohibits the commission from seeking otherwise available public injunctive remedies. That's very significant because that means if there's no standing which there is not, it does not implicate the consent decree. My colleague conceded that nobody paid the $1.99 but then essentially made the argument, well, somebody could have. That's not the standard. The addition is my colleague said that within... Let me ask you the same question. The district court didn't reach the question. Why do we reach the question? The district court did not reach the question. Why do we reach the question? Your Honor, I don't think this court has to reach the question and the reason the court doesn't have to reach the question is because whether the $1.99 is illegal or not, they never incurred it so they don't have standing and I want to differentiate something. I repeat then so why should we even address it if the district court has not addressed it? Your Honor, the court should find that there's no standing because they didn't incur it and if they don't have standing they can't pursue public injunctive relief. I want to make a distinction because... Do you agree that there is a pending motion to file an amended complaint as to which one or more of the plaintiffs have in fact paid that $1.99? No, Your Honor. I understand there's a So you agree that there is that pending motion? There is a pending, yes, Your Honor, but I also want to point out that in the complaint and even in depositions Ms. Spruill kept saying that she had paid the $1.99 finally when push came to shove she had to admit she did it. I understand all that. It's not disputed that neither of the two named plaintiffs did not pay the $1.99. And that's critical, Your Honor because since those two did not pay it, there is no standing and with respect to the $45 what I heard my colleagues say is what relief they're seeking and it is exactly what the AG has already enjoined. My colleague also pointed out that... But the AG basically got itself an injunction repeating the language of the statute saying don't violate the statute. No, Your Honor. It went beyond that. It said if we cannot prove that this is a lawful cost then it is not permissible and they could take further action. So much like they are claiming that somehow these fees are unlawful the AG's position is if it is unlawful, we will take action against you. So, Your Honor, it is enjoined on that and my colleague says... But is your position then that once the AG has entered this order the only entity that can enforce the obligation of the statute is the AG? The AG... Should we read the AG's order as depriving private individuals of a cause of action they previously had? Your Honor, it is not depriving them of a cause of action. It is depriving them of a public injunction and that is what I wanted to point out. My colleague says, well, we are seeking damages so we have standing. We are not saying that there is not standing for other claims. What we are saying is the public injunction claims need to go because they do not have standing. Viking River Cruises abrogates Blair and also because of the severability. I think they are conflating the issues of standing for some claims versus the public injunction. But with respect to the public injunction, Your Honor, they do not have standing and what I heard my colleague talk about, the relief they are seeking, is the relief that they have already been granted with respect to the $45. With respect to the $1.99, I heard a concession they did not pay it and the California Supreme Court has held mere inclusion of a CLRA, for that matter, Carnet violating provision in a contract does not convert standing when the consumer is not personally damaged. That is Meyer versus Sprint Spectrum. What they are asking this Court to do is ignore Article III standing rules and just assume type of harm that they did not incur or which has already been enjoined. I see that I am out of time but I want to make sure I answer your questions, Your Honors, if there are any more. Thank you, Your Honors. Thank you both for the helpful arguments. The case has been submitted.
judges: FLETCHER, TALLMAN, LEE